The party's now all here in Donnay v. Donnay International. Do we still not have counsel? Are you here in Donnay v. Donnay International? Were you counsel who was delayed this morning? Who was delayed this morning? I was here the whole time. Who was delayed? You weren't here when we started court this morning, counsel? Your Honor, I was on the line about 20 to 10 downstairs. It took a long, long time. But when I came in, I had heard the announcement and I thought that the first case was the first case. I didn't know who I was talking to. All right. In any event, why don't we get started? We'll hear you now. All right. Let's get started. May it please the Court. My name is Paul Siegert. I have recently been retained to argue the appeal in this case. We seek reversal of the memorandum in order of Judge Azraq, dated September 1, 2016. Right from the get-go, it's the position of Donnay that the lower court erred by misconstruing the 2009 licensing agreement and by not ordering a hearing as to issues concerning which form selection clause applies, whether there was, in fact, a notice of termination, and were the claims of Donnay coming under either of the agreements. Now, Your Honor, the court erred in misconstruing the 2009 licensing agreement and, in particular, the termination language, which was contained in paragraph 17. The court said that the plaintiff, however, simply ignores the license provisions that explicitly allow the licensor to provide the plaintiff, that's us, with a notice of termination, at which point all of the copyrights and the intellectual property would vest absolutely in the licensor. And then, Your Honor, the court refers to section 17.9 in saying that. Your Honor, what the court misconstrued, and frankly I think what is not in the briefs of either of the parties, is that that language refers to two different types of terminations. It refers to the immediate termination of the agreement, but then it refers to a termination based on a material breach, which would require a 30-day notice. Now, in the very beginning of that paragraph, 17.1, it talks about the immediate termination if certain events occur. Now, these would be the normal occurrences. If, for example, there was a liquidation of my client, Denae, or the receivers were appointed, or there were some assignment for the benefit of creditors, it says under that provision that there is an immediate termination of the agreement. However, when you go to 17.1.5, it then starts talking about a different kind of termination. What it is is they talk about a material breach, and if there's a material breach of the contract, then a 30-day notice is required. Now, as you go down the paragraph 17, for example, 17.7 is talking about the immediate termination. Are you going to get to the issue of farm nonconvenience, which I thought was the central issue? It is the central issue, but the question then becomes, well, does farm nonconvenience even apply to this? Why can't we stay in the United States? You have a farm selection clause, so now you have to tell us why the judge erred in thinking that it was applicable here. Well, Your Honor, if you look at the farm selection clause in the 2009 agreement, that's paragraph 26.9, it's very limited. All it says is that this agreement, meaning the 2009 agreement, is going to be governed by the laws of England and Wales, and the parties submit to the exclusive jurisdiction. That's 2009. A parallel clause in the 2012 amendment? No, that's not so, Your Honor. I don't agree, because if you look at the 2012, what it says there, it's expanding. It's now saying that including noncontractual disputes or claims, that's the language that's there. So that clause is going far beyond 2009, where only this agreement is going to be subject to the farm selection clause. Here it says this agreement plus noncontractual stuff. I'm not sure how that helps you, so why don't you tell us why the district court erred in thinking that these agreements obliged you to litigate in England and Wales? Because the claims of my client, okay, the claims that were made were not claims under the agreement itself. They went far beyond that. The claims that my client was making had to do with actions that were taken by the international adversary, actions that were taken after they purported to have canceled the agreement or terminated the agreement. For example, they went to our Chinese manufacturer, and then they started sending letters to them interfering with our business, disparaging our business, and doing that sort of thing. Would you not agree that, as a general matter, this all arises from the initial licensing agreement, all of these disputes? It doesn't. So if you didn't have a licensing agreement, you'd still have these claims? Well, the claims went beyond it because there's nothing. No, no, no. If you didn't have the licensing agreement, would you have any of the claims that you're pursuing? We could have, yes. You could have. We could have, yes, Your Honor, especially because the first two words of the 2009 are this agreement, just this agreement. And what was done later on was that they had actually gone to our customers and said that we were illegally dealing in their products and that sort of thing. That happened later on. I'm not sure I see in your brief where you argued that the claims you're making fall outside the forum selection clauses. Do you want to tell me where you made that argument in your brief? Your Honor, I'm not sure that, well— I understood your brief to basically be making what I'll call a step four inquiry, which is that it would somehow be unreasonable or unjust, or that the clause was invalid or something like that. But not that the claims don't fall within the clauses. I didn't see that in the brief. And if I overlooked it, point it out to me. Your Honor, I don't think that you did overlook it. Then I don't think you can make the argument here orally for the first time. Well— What's your challenge? Well, Your Honor, as I said, that— Your Honor, my client just walked up and said that this is in the brief. Well, I'm happy to have it pointed out to me. As I said, if I overlooked it, I want to make sure I do focus on that. I'm not sure that I saw that either. You can tell us on rebuttal after you have a chance—oh, you didn't reserve time for rebuttal. Consult with your client if you want to tell us where it is. Your Honor, while my client is looking for that— What happened in this case was that there was a lawsuit that was filed by my client in the Eastern District. And, Your Honor, that case was dismissed. What happened in that original case, and it's in the fact pattern, is that our adversaries actually contested that case on the merits and got a decision basically saying that our claims were dismissed. And what we're saying is that it would be against public policy for our adversaries to go into court, litigate on the merits, win on the merits, and then when there's a second case, all of a sudden they decide that, oh, well, let's just invoke a clause where we're going to go 5,600 miles away to England and try to invoke this. Your Honor, what should have happened in this case, based on the arguments that I've made, is that the lower court should have had a hearing to see which of these clauses or which of the agreements were effective, if any. There should have been a hearing as to whether either of them was terminated according to the provisions in the agreement. And the court had to find out which of these clauses really applied, and that's the argument that I just made. Your Honor, my client has given me Issue 3 on page 12, Factual Dispute on Scope of Form Selection Requires an Evidential Hearing. I'm sorry, page what? It looks like he started on page 12. That's what he handed me, Your Honor. This is not part of the argument. The arguments start at page 13. So what is it that this is the summary of arguments? All right, we're in the summary of arguments. Is it argued that the claim doesn't fall within the form selection agreements? My client says it's the reply brief. I'm sorry, I misled the court, I think, when I said that. No, we don't have to consider arguments raised for a first time in a reply brief, but in any event, what page? Page 13, Your Honor. 13? And what in page 13? And that talks about tort claims. Your Honor, what my client is saying to me basically is on page 13, where it says the 2012 Supplemental Agreement, Form Selection Clause added, and that would be the non-contractual disputes or claims. That had been added later on. All right, thank you. Yes. Thank you. I think your time is up. Thank you, Your Honor. Thank you. May it please the Court, Your Honors, my name is Robert Sakoff. I represent the defendants at Paliz. A couple of responses to several of the points that my adversary made. First, there was an earlier case filed by the plaintiff in this case. Actually, it was filed in the Supreme Court of State of New York, Nassau County. We removed that case to the Eastern District of New York, filed a 12B6 motion to dismiss. The motion to dismiss was granted by Judge Feuerstein. That's the case that they were referring to. There was no further proceedings. It was not on the merits. It was a pleading motion, and it was dismissed. Thank you. After that was dismissed, a notice of appeal to this court was filed, but was dismissed. The new case then was filed, and that's the case that was dismissed by Judge Azraq, and that's the case that's on appeal to you today. Another point about claims made within or under the contract between the parties. There's no dispute that the parties were the parties involved in the litigation in the group. The case law has been very expansive in not limiting the claims covered by these form selection clauses to the technical claims specified in the language of the form selection clause. Martinez itself was an American with Disabilities Act claim, and that was not specifically covered in the employment agreement between the parties, but the court and this court felt that that was ruled, that that was covered. Several things were argued today that were simply not in the briefs. Some were acknowledged as not being in the briefs. Other things have been filed in this appeal. Materials denied on motion that weren't even in existence at the time of the proceedings before Judge Azraq. We have treated this case and briefed it and are arguing it basically as what the court— As I understood it, the main argument, although it seems to have changed a little bit on the briefs, was that it would be unjust to litigate this case in the U.K., in England and Wales. And I wonder if you could help me with figuring out what the boundaries of that might be. Would you agree that if, lawfully or not, your client's actions rendered the plaintiff's completely— conclude that it was unjust or would be unjust to force them to litigate in England and Wales? Well, Judge, this is, as the court suggested a moment ago, we've treated it as a basic Step 4 inquiry under Menendez. There are limits, and— Martinez. I'm sorry? Menendez or Martinez? Martinez, excuse me. There are limits to that application of forum selection clauses, and I think one of the best examples is the Boeing case where the engineer was having problems in Saudi Arabia and he was essentially imprisoned. They took his visa away and he barely got out of the country, and if he went back into the country to litigate as required under the forum selection clause, it would appear that he would be imprisoned and maybe wouldn't get out again. So there are lines to be drawn. In this case, there's really nothing that's been shown other than the usual arguments that are made in these forum selection cases, Class 4. This was an agreement, a commercial agreement, that had multinational contact points. Our clients are a Belgian company and two British companies. The plaintiff is a New Jersey company with offices in New York. The trademark license of the Donne trademark racket brand covered not only the United States but also Canada, South Korea, and Canada. So it was perfectly reasonable to have forum selection clauses in both the original agreement and in the negotiated amendment of the agreement that took place in 2012. So we think that, and we submit that— Your answer is this is not a case where they are unable, like the Boeing executive, to go to the U.K.? That's correct, Your Honor. As to the evidentiary hearing, this claim or request was made before Judge Azraq. There were unambiguous forum selection clauses. Judge Azraq made the decision that it was not necessary to have an evidentiary hearing. This part of it is judged by an abuse of discretion standard. We submit there was no abuse of discretion. Judge Azraq wrote a very comprehensive and thorough opinion covering just about every conceivable aspect of this matter. We would ask the Court to affirm. Thank you. Thank you very much. I don't think you reserved any time for rebuttal. Thank you. All right. We will take the case under advisement, and we stand adjourned. Court is adjourned.